IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAYLOR F., individually and as parent and natural guardian of T.F., a minor,<br>        Plaintiff,<br><br>vs<br><br>LAWRENCE COUNTY, LAWRENCE COUNTY CHILDREN AND YOUTH SERVICES and JOSHUA LAMANCUSA, individually and in his official capacity,<br>        Defendants. | Civil Action No. 18-1397<br><br>Magistrate Judge Mitchell |

MEMORANDUM OPINION AND ORDER

Plaintiff, Taylor F., individually and as parent and natural guardian of her son T.F., a minor, brings this action pursuant to 42 U.S.C. § 1983 and state law against Defendants, Lawrence County, Lawrence County Children and Youth Services ("LCCYS") and Lawrence County District Attorney Joshua Lamancusa. The Complaint arises out of a series of incidents during which T.F. was taken from Taylor F.'s custody and put in numerous foster homes (where he was subjected to abuse) until Taylor F. testified for the Commonwealth at a criminal trial, and also out of allegations that Lamancusa tried to force Taylor F. to act as a confidential informant for him and to provide him with sexual favors.

Defendants have filed a motion to dismiss (ECF No. 8), asserting a variety of grounds. Plaintiff has filed a brief in opposition (ECF No. 16) and the motion is now ripe for disposition. For the reasons that follow, the motion will be granted in part and denied in part.

Facts

In November 2013, Plaintiff (who was then seventeen years old) was with her infant son T.F. at an apartment in Ellwood City with Leon Platt, Laxavier Crumb, Heather Hall, Shane Mihalko and Richard Hogue when she witnessed Platt shoot Hogue. The other individuals fled,

but Taylor F. stayed with Hogue, trying to keep him awake and hugging and holding him because he begged her not to leave. (Compl. ¶¶ 8-16.)[1] She called 911, provided the address and notified the dispatcher than a person had been shot, but she hung up the phone when the dispatcher began asking questions. After ten minutes, she called back to ask if help was coming and the dispatcher said "No, because you hung up the phone." Taylor F. then answered a series of questions and an ambulance was sent, but Hogue succumbed to the gunshot wound. Three days later, Ellwood City police asked her to come to the police station to give a second statement. She acknowledges that in her original statement she was not completely forthright. (Compl. ¶¶ 14-21.)

When she went to the police station, she was assaulted by police officers and taken to a juvenile facility in Oil City, Pennsylvania. (Compl. ¶¶ 23-30.)[2] That night, when she called her mother, she learned that LCCYS and the police had taken T.F., without providing any kind of paperwork and without telling where or why they were doing so. At a preliminary hearing, all of the charges against Plaintiff were dropped, and an LCCYS official told her that she would get T.F. back as soon as she testified against Platt and completed all of their programs. She was informed that her parents were an option, but LCCYS would not allow her to sign temporary legal custody over to her parents at that time, nor would the agency allow T.F. to be placed with his father, Timothy Rose, Jr. Plaintiff indicates that she did testify against Platt at the preliminary hearing in December 2013 and that she completed two parenting classes of six weeks each, anger management, a mental health evaluation and a psychological evaluation. She was given a document stating that no drug or alcohol treatment was needed. (Compl. ¶¶ 31-38.)

---

[1] ECF No. 1.
[2] As Defendants observe, despite the detailed description of the assault, Plaintiff brings no claims against the Ellwood City police officers in this suit.

After being released from the juvenile facility, Plaintiff attended a court proceeding and District Attorney Lamancusa brought her into his office. He had his secretaries search Taylor F. and take her cellphone, then brought her into his office, where he offered her a cigarette and they smoked. Lamancusa asked her to work for him as a confidential informant and promised her that she would get her son back soon if she complied. He also told her that she was "beautiful, smart and conniving" and that if she did him a favor, he would do a favor for her. She believed that he was asking for sexual favors and told him she was uninterested and he said "We will see about that." He then put his hand on her hair and ran it all the way down her back to her buttocks before allowing her to leave. (Compl. ¶¶ 39-46.)

Initially, Plaintiff was permitted visits twice a week for one hour with T.F. She noticed that he had cigarette burn marks on his back and many bruises and scratches. She showed them to an LCCYS caseworker and took photographs. The caseworker told Plaintiff that she needed more anger management because she did not speak nicely about the abuse her son was being put through. Shortly thereafter, the foster family did not want T.F. and he was given to another foster family. When T.F. was sent to visit with Plaintiff, she found that he had moldy bottles and she replaced them with new ones. The caseworker acknowledged that the bottles were "gross," but took no action to remedy the situation. In March 2014, Plaintiff removed T.F.'s diaper and found a rash so severe that it was bleeding, but LCCYS did not take T.F. to the hospital until the injury was almost healed. T.F. was given to a third foster family in April 2014, but when Plaintiff would visit, she found moldy sippy cups and T.F. smelled badly. Two months later, T.F. was given to a fourth foster family. Plaintiff found that T.F. was hungry during visits and mentioned to a nurse that T.F. was behind developmentally, so the nurse began to monitor T.F.'s weight. Only after the nurse demanded that T.F. be taken to Children's Hospital did LCCYS act and T.F.

was admitted for malnutrition and constipation. After this incident, T.F. was placed with Plaintiff's elderly grandfather, who had cancer. LCCYS removed T.F. from his care four months later and T.F. was placed in a sixth foster home. (Compl. ¶¶ 47-68.)

At the end of April 2014, Lamancusa again brought Plaintiff into his office and made sexual advances to her. She walked out of his office and collected her belongings. (Compl. ¶¶ 69-73.) She indicates that she was complying with the instructions of the caseworker to get T.F. back, including moving out from her parents' house and renting a house at 304 Sims Street Rear, Ellwood City, because LCCYS instructed her that once she moved out of her parents' house, T.F. would be returned to her. Meanwhile, the sixth foster family informed Plaintiff that T.F. was behind on seventeen shots, that they had not been told T.F.'s last name or his birthday or race, nor did they receive a folder saying what he liked to eat or play with. He came with one book bag filled with some clothes and a note with a doctor's appointment on it. (Compl. ¶¶ 74-80.)

In February 2015, Plaintiff was arrested and placed in the Lawrence County Jail for approximately two months. The District Attorney's Office seized her parents' car, a television that Taylor F. bought for Christmas with money from her grandmother and a computer that she bought with money from her other grandmother. Although checks and receipts were provided, nothing was ever returned. Lamancusa became more brazen knowing that she was desperate to get her son back. He began to call Plaintiff's cell phone, wanting to meet with her and promising her the return of her son and a good future. Two months after Plaintiff got out of jail, LCCYS took away her visits with T.F. and minimized them to one visit every other week. In August 2015, Plaintiff met Gilberto Bobadilla and became pregnant in January 2016. Bobadilla witnessed phone calls and messages from Lamancusa in which he threatened Taylor F. that if she

4

did not cooperate with him he would make sure that she would go to prison and never see her son again. Lamancusa again told her that if she did him a favor he would do one for her and she agreed in order to placate him although she had no intention of doing so. Lamancusa then dropped all of her drug charges down to disorderly conduct and she was permitted off of probation very early, and he offered to expunge her juvenile record. But when she failed to reciprocate with sexual favors, Lamancusa became angry and told her she had to leave the state. After Plaintiff gave birth to a daughter (N.F.) while she was living at her parents' house, Lamancusa came to the house at 2:00 a.m. in February 2017. He grabbed her and started kissing her neck all the down to her inner thigh. She was afraid to make him angry so she said her daughter was crying, woke her up and brought her into the kitchen so that he would leave. He made her delete messages and threatened to refile charges if she did not stage messages and act interested because he did not trust her. Previously, around June 2016, she testified at Platt's murder trial and almost immediately thereafter, T.F. was returned to her. (Compl. ¶¶ 81-100.)

Plaintiff alleges that T.F. struggles with everyday life and with functioning in society. He is afraid of new people and can be aggressive, and he becomes afraid whenever Taylor F. leaves him. He is petrified of closed doors because Taylor F. believes that he was locked in his bedroom by his last foster family. He does not function well in school or get along with his peers. He eats impulsively and is delayed socially, verbally and in his motor skills, and he has poor relationship skills, as psychologists have indicated. He struggles to get along with his sister N.F. T.F. thrives off negative attention, and has PTSD and suffers from various triggers related to the horrific things he has been through. When Taylor F. gives him a bath, T.F. says "Please mama don't put my head under the water" as if he had been drowned in a bathtub. Taylor F. had to give her then three-year old son a shower instead. (Compl. ¶¶ 101-10.)

Procedural History

Plaintiff filed this action on October 19, 2018. Federal question jurisdiction is premised upon the § 1983 claims, 28 U.S.C. § 1331. Supplemental jurisdiction is asserted over the state law claims, 28 U.S.C. § 1367. Count I alleges claims of procedural and substantive due process against all Defendants arising out of T.F.'s being taken from Taylor F. without reasonable grounds, kept in protective custody without benefit of a formal hearing and kept from Taylor F. until she testified in a criminal trial. Count II alleges a conspiracy claim against all Defendants for depriving Taylor F. and T.F. of their procedural and substantive due process rights. Count III alleges a claim under § 1983 for the County's and LCCYS's failure to protect T.F. in foster care. Count IV alleges a state law claim of assault against Lamancusa and Count V[3] alleges a claim of battery.

On December 19, 2018, Defendants filed a motion to dismiss (ECF No. 8). On February 11, 2019, Plaintiff filed a brief in opposition (ECF No. 16).

Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual

---

[3] The Complaint refers to this claim as "Count 4," but this is a typographical error.

allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

Defendants argue that: 1) the civil rights claims asserted by Taylor F. on her own behalf are untimely because they were filed more than two years after T.F. was returned to her custody; 2) the substantive due process claim in Count I fails to meet the "shocks the conscience" standard because, even according to the allegations of the Complaint, T.F. was removed from Taylor F.'s custody after he was present at the scene of a homicide and after she was placed in a juvenile detention facility; 3) the procedural due process claim in Count I should be dismissed because she points only to state statutes that were not followed; 4) Count II fails to allege a conspiracy because it contains only vague allegations and it is legally impossible for the County to conspire with its own agency (LCCYS) and a County official (Lamancusa); 5) Count III appears to allege a claim under the state-created danger theory but it fails to meet the elements of such a claim; and 6) after the federal claims are dismissed, the state law claims should be

7

dismissed pursuant to 28 U.S.C. § 1367(c)(3).

Plaintiff responds that: 1) as Defendants acknowledge, the statute of limitations would not bar claims on behalf of T.F., a minor, and Taylor F. did not obtain full custody of him back until December 2016, and there was an ongoing conspiracy to keep him from his mother; 2) the substantive due process claim has been adequately pleaded—just because T.F. was unfortunately at the scene of a homicide does not mean that he should have been taken from Taylor F.'s care and the Complaint does not allege that she was placed in a juvenile facility for a good reason (on the contrary, it alleges that the charges against her were dropped) and there was no evidence of abuse, therefore no basis for removing T.F. from her custody; 3) the procedural due process claim has been adequately pleaded—no notice or opportunity to be heard was given prior to T.F. being taken and unlike the case Defendants cite, no post-deprivation hearing was held within 72 hours; 4) the intracorporate conspiracy doctrine upon which Defendants rely has not been applied to a situation in which a county and its agency are alleged to have conspired with a county official, who is also being sued in his individual capacity; 5) Count III does not allege a state-created danger theory but a claim of failure to protect a child in foster care; and 6) the state law claims should not be dismissed because even Defendants acknowledge that they are not seeking dismissal of all the federal claims and in addition they do not involve complex or novel issues of state law.

### Statute of Limitations for Civil Rights Claims

The Court of Appeals has stated that:

Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer. Rule 12(b) states that "[e]very defense ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion...." The defenses listed in Rule 12(b) do not include limitations defenses. Thus, a limitations defense must be raised in the answer, since Rule 12(b) does not permit

8

> it to be raised by motion. However, the law of this Circuit (the so-called "Third Circuit Rule") permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).

Robinson v. Johnson, 313 F.3d 128, 136 (3d Cir. 2002) (footnote omitted). Defendants argue that the Complaint facially shows noncompliance with the limitations period. Plaintiff contends that the Complaint does not show noncompliance.

Because Congress did not establish a statute of limitations for civil rights claims, federal courts "borrow" state statutes of limitations governing analogous causes of action. Wilson v. Garcia, 471 U.S. 262, 276 (1985) (for claims brought under 42 U.S.C. § 1983). Under Pennsylvania law, the statute of limitations for personal injuries is two years, 42 Pa. C.S. § 5524(2), and that statute is applied to § 1983 claims. Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003).

Unlike the selection of the limitations period, the date the cause of action accrues is governed by federal law. Wallace v. Kato, 549 U.S. 384, 388 (2007). The Court noted that:

> Under those principles, it is "the standard rule that [accrual occurs] when the plaintiff has 'a complete and present cause of action.'" Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201, 118 S.Ct. 542, 139 L.Ed.2d 553 (1997) (quoting Rawlings v. Ray, 312 U.S. 96, 98, 61 S.Ct. 473, 85 L.Ed. 605 (1941)), that is, when "the plaintiff can file suit and obtain relief," Bay Area Laundry, supra, at 201, 118 S.Ct. 542.

Id. In other words:

> the tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages. The cause of action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief.

9

Id. at 391 (citation omitted). These principles sometimes lead to harsh results, but they apply nonetheless. See Kach v. Hose, 589 F.3d 626, 634-35 (3d Cir. 2009) (civil rights claims of young woman, who ran away from home in 1995 at age 14 and lived with security guard for approximately 10 years, accrued in 1999 when she reached the age of majority and thus her suit, filed in 2006, was untimely).

The Complaint in this case was filed on October 19, 2018. Thus, the events upon which it is based must have accrued on or after October 19, 2016. Defendants argue that Taylor F. must have been aware of the improper removal of T.F. and the series of placements thereafter by June 2016, when she indicates that T.F. was returned to her custody. Plaintiff responds that she did not obtain full custody of T.F. until approximately six months later (December 2016) and there was an ongoing conspiracy and thus her claims would be timely.

According to the allegations of the Complaint, T.F. was removed from Taylor F.'s custody in late 2013 and the placements with foster families ended in June 2016 when T.F. was returned to Taylor F. On the face of the Complaint, Taylor F.'s claims accrued more than two years before she filed this action. See Crawford v. Washington County Children & Youth Servs., 353 F. App'x 726 (3d Cir. 2009) (minor was removed from parents' home in October of 2000, CYS initiated a sex-abuse investigation in August 2002 and permanently terminated their rights in January 2004, but they did not bring suit until December 2006 and their suit was untimely). Plaintiff's argument that, although T.F. was returned to her in June 2016, she did not obtain full custody of him until six months later, must be rejected because "a continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." Cowell v. Palmer Township, 263 F.3d 286, 293 (3d Cir. 2001). Although Taylor F. may have continued to suffer ill effects after T.F. was returned to her in June 2016, Defendants are not

alleged to have engaged in any further unlawful acts thereafter. Thus, Taylor F.'s civil rights claims on her own behalf are time barred.

On the other hand, as Defendants admit, the claims she brings on behalf of T.F. are not time barred because T.F. is a minor and Pennsylvania has a statute that tolls causes of action until a minor reaches the age of majority. 42 Pa. C.S. § 5533(b)(1)(i). Kach, 589 F.3d at 640 (plaintiff had two years after reaching the age of majority to file suit, but did not do so until five years later). Therefore, the motion to dismiss will be granted as to Counts I, II and III with respect to Plaintiff's claims in her own right but denied as to her claims on behalf of T.F.

Counts I-III: Civil Rights Claims

It is provided in 42 U.S.C. § 1983 that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

The Supreme Court has held that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." Albright v. Oliver, 510 U.S. 266, 271 (1994). See also Baker, 443 U.S. at 140; Graham v. Connor, 490 U.S. 386, 394 (1989).

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. In Count I, Plaintiff alleges that Defendants deprived Taylor F. and T.F. of their liberty interests, privileges and immunities,

11

particularly: the liberty and privacy interest in maintaining custody of T.F. without undue interference including removing T.F. from the home without notice and a hearing, the right of familial association, the right to freedom of association and the right to substantive and procedural due process secured by the Fourteenth Amendment. In Count II, Plaintiff alleges a conspiracy to deprive Taylor F. and T.F. of these constitutional rights and in Count III, Plaintiff alleges that the County and LCCYS acted with deliberate indifference to T.F.'s right to bodily integrity by placing him in at least three foster homes where he was mistreated.

"The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment." Stanley v. Illinois, 405 U.S. 645, 651 (1972) (citing Meyer v. Nebraska, 262 U.S. 390, 399 (1923)). This fundamental liberty interest is not absolute, but "must be balanced against the state's interest in protecting children suspected of being abused." Miller v. City of Phila., 174 F.3d 368, 373 (3d Cir. 1999) (citing Croft v. Westmoreland County Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997)). Parents' interest in the care, custody and management of their children is also protected by the substantive due process clause. Id. at 374. "Individuals have a constitutional liberty interest in their personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citations omitted). Therefore, the Fourteenth Amendment is implicated in this case.

Count I

In Count I, Plaintiff alleges procedural and substantive due process claims arising out of Defendants' acts of taking T.F. from Taylor F.'s custody and keeping them separated until Taylor F. testified against Platt at a criminal trial. Defendants move to dismiss Count I on the grounds that the substantive due process claims fails to allege "conscience shocking" behavior

and the procedural due process claim is based solely on state statutes. Plaintiff responds that she has alleged conscience-shocking behavior and that her claims is not based solely on failure to comply with state statutes.

Substantive Due Process

As the Supreme Court has explained, it is "the substantive component of the Clause that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992) (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)).

"To generate liability, executive action must be so ill-conceived or malicious that it 'shocks the conscience.'" Miller, 174 F.3d at 375 (citing County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998)). Defendants argue that the Complaint alleges that T.F. was removed from Taylor F.'s custody after the minor was present at the scene of a homicide and his mother was placed in a juvenile facility for a "presumably not benign reason."

Plaintiff disputes both Defendants' unsupported legal argument and their reading of the Complaint. She argues that no case has held that a minor child who—through no fault of the parent—was present at the scene of a homicide should be removed from the parent's custody. Moreover, the Complaint does not allege that Taylor F. was placed in a juvenile facility for a reason that was presumably not benign. On the contrary, the Complaint alleges that the charges against her were dropped at the preliminary hearing.

At this stage of the proceedings, the allegations of the Complaint must be taken as true. Thus, the Complaint alleges that T.F. was accidentally present at the scene of a homicide, that Taylor F. was placed in a juvenile facility on the basis of charges that were dropped at the preliminary hearing and that there was no allegation of abuse. In this scenario, the removal of

13

T.F. from Taylor F.'s custody could rise to the level of conscience-shocking behavior. Moreover, Plaintiff has also alleged that Defendants kept T.F. apart from her until she testified against Platt at a criminal trial and Defendants have not even suggested that such an allegation is not conscience-shocking.

Procedural Due Process

"Once it is determined that due process applies, the question remains what process is due." Goss v. Lopez, 419 U.S. 565, 577 (1975) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). The determination of what process is "due" is "not to be found in statutes … [but] is a question of federal constitutional law." McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir. 1995) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)). Defendants argue that Plaintiff cites only to state procedures that were not followed such as holding T.F. in protective custody for more than 72 hours without benefit of a formal hearing, 42 Pa. C.S. § 6332, and failing to explain to Taylor F. her rights within 48 hours of taking T.F. into protective custody, §§ 6337 and 6338. Dennis v. Dejong, 557 F. App'x 112, 118 (3d Cir. 2014) (CYS failed to provide a dependency petition within 48 hours of the initial hearing but the court held that they still received notice of the allegations).

Plaintiff responds that, unlike the situation in Dennis, she was not provided a post-deprivation hearing within 72 hours. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Matthews v. Eldridge, 424 U.S. 319, 333 (1976) (citation omitted). "Initiating child custody proceedings by *ex parte* orders is generally constitutional if a prompt post-deprivation hearing is held." Miller, 174 F.3d at 372 n.4. Plaintiff has alleged that no notice was given to her before T.F. was taken, she was not provided with a pre-deprivation opportunity to be heard and, unlike the situation in

14

Dennis, she was not even given the opportunity to be heard within 72 hours of the deprivation. 557 F. App'x at 117 (CYS failed to provide the parents with a pre-deprivation hearing, but this did not violate the parents' due process rights when they were provided a post-deprivation hearing within 72 hours). Accepting these allegations as true, Plaintiff has stated a procedural due process claim. Therefore, with respect to Count I, the motion to dismiss will be denied.

Count II

In Count II, Plaintiff alleges a conspiracy to deprive Taylor F. and T.F. of their rights. Defendants argue that the allegations of the Complaint are too vague to allege a conspiracy and that it is legally impossible for the County, LCCYS and Lamancusa to conspire with each other.

Plaintiff alleges that LCCYS told her immediately after the charges were dropped at the preliminary hearing that T.F. would be returned to her if she cooperated with the District Attorney's Office and testified against Platt. She also alleges that Lamancusa told her that she would get her son back sooner if she worked for him as a confidential informant, threatened to keep her son from her if she did not cooperate and said he would do her a favor if she did him a favor. She has also alleged that her son was returned to her after she testified against Platt. These allegations are specific enough to allege a conspiracy to keep T.F. from Taylor F. until she testified against Platt.

With respect to Defendants' argument that they could not conspire with one another because they are the same entity, it is true that LCCYS is a County agency that acts on the County's behalf. B.S. v. Somerset County, 704 F.3d 250, 254 n.5 (3d Cir. 2013). It is also true that Lamancusa is a County official. However, Plaintiff has sued him in both his official and individual capacities. The Court of Appeals has held that "a section 1985(3) conspiracy between a corporation and one of its officers may be maintained if the officer is acting in a personal, as

15

opposed to official, capacity." Robison v. Canterbury Village, Inc., 848 F.2d 424, 430 (3d Cir. 1988) (citations omitted). See also Snell v. Asbury, 792 F. Supp. 718, 721 (W.D. Okla. 1991); Stathos v. Bowden, 728 F.2d 15, 21 (1st Cir. 1984). Therefore, with respect to Count II, the motion to dismiss will be denied.

Count III

In Count III, Plaintiff alleges a claim against the County and LCCYS for failing to protect T.F. in foster care. Defendants argue that Plaintiff is attempting to state a claim under the state-created danger theory but fails to allege the elements of this claim.

As a general proposition, the government does not have a duty to protect individuals from private violence. A duty may arise out of certain "special relationships." DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 197-98 (1989). Defendants argue that Count III alleges a claim under the state-created danger theory but fails to allege the elements of such a claim, namely that the harm was foreseeable and fairly direct, that their behavior shocked the conscience and that there was a relationship between the state actors and Plaintiff. Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006). However, Plaintiff responds that Count III a claim of failure to protect a child in foster care, not a state-created danger theory.

The Court of Appeals has held that "when the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties. The failure to perform such duties can give rise, under sufficiently culpable circumstances, to liability under section 1983." Nicini v. Morra, 212 F.3d 798, 808 (3d Cir. 2000). Plaintiff properly alleges this special custody relationship, not a state-created danger theory of liability. Therefore, with respect to Count III, the motion to dismiss will be denied.

Supplemental Jurisdiction

In Counts IV and V, Plaintiff alleges state law claims against Lamancusa for assault and battery. Defendants move to dismiss these claims pursuant to 28 U.S.C. § 1367(c)(3).

The supplemental jurisdiction statute provides that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Plaintiff's state law claims in Counts IV and V arise out of the same circumstances and are so related to their federal claims that they form part of the same case or controversy. See Lyon v. Whisman, 45 F.3d 758, 761 (3d Cir. 1995). Therefore, the Court has supplemental jurisdiction over them based on its original jurisdiction over Plaintiff's federal civil rights claims in Counts I-III.

Subsection (c) provides that a district court may, in its discretion, decline to exercise jurisdiction if any of four conditions are met. One of these conditions is if "the district court has dismissed all claims over which it has original jurisdiction." § 1367(c)(3). However, for the reasons explained above, the claims in Counts I, II and III should not all be dismissed. Therefore, dismissing the state law claims is not appropriate at this time.

For these reasons, the Motion to Dismiss filed by Defendants (ECF No. 8) will be granted in part and denied in part.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAYLOR F., individually and as parent and natural guardian of T.F., a minor,<br>   Plaintiff, | )<br>)<br>)<br>) | |
| vs | ) | Civil Action No. 18-1397 |
| LAWRENCE COUNTY, LAWRENCE COUNTY CHILDREN AND YOUTH SERVICES and JOSHUA LAMANCUSA, individually and in his official capacity,<br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) | Magistrate Judge Mitchell |

## ORDER

AND NOW, this 28th day of May, 2019, for the reasons explained above,

IT IS HEREBY ORDERED that the Motion to Dismiss filed by Defendants (ECF No. 8) is granted with respect to Taylor F.'s individual claims in Counts I, II and III and denied in all other respects.

IT IS FURTHER ORDERED that Defendants file an answer to the Complaint by June 11, 2019.

                     s/Robert C. Mitchell_____
                     ROBERT C. MITCHELL
                     United States Magistrate Judge